IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Shirley Burch, Administratrix of<br>the Estate of Lois Coleman, deceased,<br>and in her own right<br>4113 Don Tomaso Drive, #4<br>Los Angeles, CA 90008<br><br>Plaintiff<br><br>vs.<br><br>Center Management Group, LLC<br>141-40 Union Turnpike<br>Flushing, Queens, NY 11367<br><br>and<br><br>1412 Lansdowne Operating, LLC d/b/a<br>St. Francis Center for Rehabilitation &<br>Healthcare<br>701 Lansdale Ave.<br>Lansdale, PA 19446<br><br>Defendants | CIVIL ACTION<br><br>No.<br><br>JURY TRIAL DEMANDED |

***COMPLAINT IN CIVIL ACTION***

Plaintiff Shirley Burch, Administratrix for the Estate of Lois Coleman, deceased and in her own right, hereby submits the following Complaint and alleges as follows:

This is a nursing home negligence and corporate negligence action brought by Plaintiff Shirley Burch, Administratrix for the Estate of Lois Coleman, deceased and in her own right.

***FEDERAL JURISDICTION***

Federal jurisdiction of this case is based upon 42 U.S.C. 1332 (a), diversity of jurisdiction as the district courts shall have original jurisdiction of all civil actions where the

matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

***PARTIES***

Plaintiff Shirley Burch, Administratrix for the Estate of Lois Coleman, deceased and in her own right, is a citizen of the State of California and presently resides at 4113 Don Tomaso Drive, #4, Los Angeles, CA 90008 and by way of Complaint against the Defendants 1412 Lansdowne Operating, LLC d/b/a St. Francis Center for Rehabilitation & Healthcare and Center Management Group, LLC states as follows:

1. Shirley Burch is the Administratrix of the Estate of Lois Coleman, deceased, and is an adult individual who is a citizen of the State of California and presently resides at 4113 Don Tomaso Drive, #4, Los Angeles, CA 90008. The late Lois Coleman was, at all times relevant, prior to her death, a citizen of the Commonwealth of Pennsylvania and she did permanently reside at 322 Mulberry St., Darby, Pennsylvania 19023.

2. Plaintiff Shirley Burch was appointed as the Administratrix of the Estate of her mother, the late Lois Coleman, on September 14, 2017, by the Register of Wills of Delaware County, Pennsylvania.

3. Defendants 1412 Lansdowne Operating, LLC d/b/a St. Francis Center for Rehabilitation & Healthcare holds itself out as a specialist in the field of adult skilled nursing care with the expertise necessary to maintain the health and safety of adult elder and persons unable to care adequately for themselves. Plaintiff is asserting a professional liability claim against the Defendants 1412 Lansdowne Operating, LLC d/b/a St. Francis Center for Rehabilitation & Healthcare and Center Management Group, LLC.

4. Defendant Center Management Group, LLC is a healthcare and business corporation with its headquarters located at 141-40 Union Turnpike, Flushing, Queens, New York 11367, which owned, operated, and/or managed the facility St. Francis Center for Rehabilitation & Healthcare and at all times relevant hereto was a corporate citizen of the State of New York. Plaintiff is asserting a professional liability claim against the Defendant Center Management Group, LLC.

5. Plaintiff's decedent, Lois Coleman, was admitted to the Defendants' nursing home, St. Francis Center for Rehabilitation & Healthcare, located at 1412 Lansdowne Ave, Darby, Pennsylvania 19023 on or about November 8, 2014, for aftercare following joint replacement surgery.

6. On September 7, 2017, the late Mrs. Coleman died from injuries sustained from septicemia, septic shock, avoidable Stage 4 decubitis ulcers, avoidable heel ulcers, avoidable sacral decubital ulcers, avoidable leg ulcers and wounds, skin infection, Escherichia Coli Bacteria infection, C diff infection, and renal failure due to dehydration, urinary tract infections, infection caused by c difficile, pneumosepsis, malnutrition, and severe muscle deconditioning, among other causes, at VITAS Inpatient Hospice Unit of Mercy Fitzgerald Hospital located at 1500 Lansdowne Avenue, 5th Floor, Darby, Pennsylvania 19023, which conditions were caused by Defendants' failure to appropriately and adequately care for the Plaintiff's decedent while under their treatment and care.

7. In the alternative, Defendants owned, operated, and/or managed St. Francis Center for Rehabilitation & Healthcare, a rehabilitation facility participating in the Medicare program and subject to 42 C.F.R. Part 489 as it pertains to rehabilitation hospitals.

***STATEMENT OF FACTS***

8. The Plaintiff Shirley Burch, Administratrix for the Estate of Lois Coleman, deceased and in her own right incorporates paragraphs 1 through 7 of this Complaint as if fully set forth herein.

9. The Defendants were under contractual, professional and legal duties to provide reasonable and adequate health care and/or skilled nursing care to Plaintiff's-decedent Lois Coleman consistent with existing community standards and pursuant to federal, state and local laws and regulations.

10. Defendants had a duty to ensure that Plaintiff's decedent Lois Coleman remained free of neglect while she relied on Defendants for adequate, proper medical, nursing and personal care.

11. Defendants had a duty to ensure that the late Lois Coleman remained free of medical and nursing neglect, including but not limited to: septicemia, septic shock, avoidable Stage 4 decubitis ulcers, avoidable heel ulcers, avoidable sacral decubital ulcers, avoidable leg ulcers and wounds, skin infection, Escherichia Coli Bacteria infection, fecal impaction, staph infection, kidney and spleen infarction, C diff infection, and renal failure due to dehydration, urinary tract infections, infection caused by c difficile, pneumosepsis, malnutrition, and severe muscle deconditioning, while she relied on Defendants for adequate and proper nursing and personal care.

12. Defendants had a duty to ensure that the late Lois Coleman received proper medications per her physician orders while she relied on Defendants for adequate and proper nursing and personal care.

13. Defendants had a duty to ensure that the late Lois Coleman was properly and accurately assessed, periodically, as concerned Mrs. Coleman's functional capacity, while she relied on Defendants for adequate and proper nursing and personal care.

14. The Defendants were under a contractual duty to provide reasonable and adequate health care to Plaintiff's decedent Lois Coleman consistent with existing community standards while she was a resident at St. Francis Center for Rehabilitation & Healthcare.

15. The Plaintiff's decedent, Lois Coleman, entered St. Francis Center for Rehabilitation & Healthcare with no pressure sores and with her skin intact on or about November 8, 2014.

16. During her stay at St. Francis Center for Rehabilitation & Healthcare, the Plaintiff's decedent acquired avoidable pressure sores to her sacrum and heels.

17. On March 30, 2016, the late Mrs. Coleman was evaluated in the emergency room for rectal bleeding and diagnosed with an E. Coli urinary tract infection and ultimately fecal impaction.

18. The St. Francis Center for Rehabilitation & Healthcare medical records note that on August 6, 2016, the late Mrs. Coleman complained of pain in her buttocks during physical therapy.

19. The St. Francis Center for Rehabilitation & Healthcare medical records document an order to elevate the late Mrs. Coleman's heels for skin protection on February 27, 2017.

20. On July 25, 2017, a sacral ulcer of 2 x 4 centimeters on the open area of the

buttocks is documented in the St. Francis Center for Rehabilitation & Healthcare medical records.

21. On July 26, 2017, the attending physician ordered repositioning every two hours on all shifts.

22. On July 27, 2017, a 6 x 5 centimeter unstageable pressure injury was noted in the St. Francis Center for Rehabilitation & Healthcare medical records.

23. On August 3, 2017, there had been orders for topical treatments to the late Mrs. Coleman's sacral wound twice daily and the sacral pressure sore was 6.5 x 6 x 2.5 centimeters and the wound was debrided.

24. On August 10, 2017, the late Mrs. Coleman had extreme pain and her sacral pressure sore was 10.5 x 6 centimeters and unstageable and the turning and repositioning had not been performed as ordered by the physician.

25. On August 15, 2017, the late Mrs. Coleman was sent to Nazareth Hospital, located at 2601 Holme Avenue, Philadelphia, Pennsylvania 19152, for surgical debridement of her sacral wound and was returned afterwards back to St. Francis Center for Rehabilitation & Healthcare.

26. On August 22, 2017, the late Mrs. Coleman was taken to the Emergency Department of Mercy Fitzgerald Hospital due to hypothermia and the presence of blood in her foley catheter, or gross hematuria. She was admitted to the hospital to rule out sepsis. She was diagnosed with a severe pressure ulcer, fecal impaction, infarction or spleen and kidneys, and staph infection.

24. The Mercy Fitzgerald Hospital medical records note a 10cm Stage 4 sacral

decubitus ulcer and large unstageable sacral decubitus upon arrival. The initial, head-to-toe nursing assessment notes state "wound care dirty in creases". The late Mrs. Coleman tested positive for staphylococcus bacteremia.

27. On September 5, 2017, the late Mrs. Coleman was discharged to the VITAS Inpatient Hospice Unit of Mercy Fitzgerald Hospital with infected wounds of the sacrum where, on September 7, 2017, she deceased.

28. As a result of the Defendants' failure of care of the Plaintiff's decedent, Defendants did cause the harm and ultimate death of the late Lois Coleman.

29. At all times relevant pertinent hereto, the late Lois Coleman was a resident of the St. Francis Center for Rehabilitation & Healthcare, pursuant to the terms of the Admission Agreement and, as such, was under the exclusive care and control of the Defendants, their agents, officers, servants and/or employees, specifically the medical director, nursing administrator, and nursing staff, including but not limited to physicians, licensed practical nurses, registered nurses, and certified nurse assistants (as well as third party contractors).

30. Defendants, their agents, officers, servants and/or employees, specifically the medical director, nursing administrator, and nursing staff, including but not limited to physicians, licensed practical nurses, registered nurses, and certified nurse assistants (as well as third party contractors) failed, refused and/or neglected to perform the duties to provide reasonable and adequate health care to and for Plaintiff's decedent Lois Coleman, who was unable to attend to her own health and safety.

31. Defendants, their agents, officers, servants and/or employees, specifically the

medical director, nursing administrator, and nursing staff, including but not limited to physicians, licensed practical nurses, registered nurses, and certified nurse assistants (as well as third party contractors) negligently and carelessly provided care and treatment to Plaintiff's decedent Lois Coleman, and all of the alleged acts, omissions and occurrences herein described or performed by the Defendants, their agents, officers, servants and/or employees, specifically the medical director, attending physicians, nursing administrator, and nursing staff, including but not limited to licensed practical nurses, registered nurses, and certified nurse assistants was within the course and scope of their agency and employment with the Defendants and in furtherance of the Defendants' businesses which did cause the Plaintiff's decedent harm and her ultimately death.

32. While Plaintiff's decedent Lois Coleman was a resident at the Defendants' facility, she sustained serious and permanent injuries including but not limited to: septicemia, septic shock, avoidable Stage 4 decubitis ulcers, avoidable heel ulcers, avoidable sacral decubital ulcers, avoidable leg ulcers and wounds, skin infection, Escherichia Coli Bacteria infection, fecal impaction, staph infection, kidney and spleen infarction, C diff infection, and renal failure due to dehydration, urinary tract infections, infection caused by c difficile, pneumosepsis, malnutrition, and severe muscle deconditioning, as well as pain and suffering related thereto. The effect of these injuries and maladies ultimately culminated in the death of Lois Coleman on September 7, 2017 and were the direct and proximate result of the negligence of the Defendants.

33. Plaintiff's decedent's injuries and death were the direct and proximate result of the negligence of the Defendants, their agents, officers, servants and/or employees,

specifically the medical director, attending physicians, nursing administrator and nursing staff, including but not limited to licensed practical nurses, registered nurses, and certified nurse assistants.

**FIRST COUNT**

**PLAINTIFF SHIRLEY BURCH, ADMINISTRATRIX OF THE ESTATE OF LOIS COLEMAN, DECEASED, AND IN HER OWN RIGHT V. 1412 LANSDOWNE OPERATING, LLC D/B/A ST. FRANCIS CENTER FOR REHABILITATION & HEALTHCARE AND CENTER MANAGEMENT GROUP, LLC**

**NEGLIGENCE**

34. Plaintiff Shirley Burch, Administratrix of the Estate of Lois Coleman, deceased, and in her own right incorporates by reference paragraphs 1 through 33 of Plaintiff's Complaint as if the same were set forth at length herein.

35. The negligence of the Defendants included, but was not limited to the following, to wit:

(a) permitting neglect of the Plaintiff's decedent Lois Coleman;

(b) failing to notify the physician and the Plaintiff's decedent's family in a timely manner of action which affected the Plaintiff's decedent's safety and well-being;

(c) failing to hire a sufficient number of trained and competent staff;

(d) violating Pennsylvania Statutes, and Pennsylvania Administrative. Regulations 28 Pa. Code § 211.5(f), §211.10(d), §211.11(a), and §211.12(a), as well as OBRA regulations, specifically, 42 CFR §482.1 *et seq*., 42 CFR §483.10(b); §483.13 (c)(2); §483.15, §483.20(b)(1)(xii), §483.20(b)(2)(ii),

§483.20(k), §483.20(h)(2), §483.25(c)(1), §483.30, §483.40(c)(1), §483.65, and §483.75(f), as to Defendants 1412 Lansdowne Operating, LLC d/b/a St. Francis Center for Rehabilitation & Healthcare and Center Management Group, LLC.

(e) failing to examine and properly treat the Plaintiff's decedent;

(f) failing to adhere to the nursing plan of care;

(g) failing to take preventative measures including, but not limited to, adequate supervision, skin inspection, positioning, transferring and turning of Plaintiff decedent;

(h) failing to discharge employees when the facility knew or should have known of the employee's propensity for negligent care of the Plaintiff's decedent;

(i) condoning, and thus allowing, untrained/unlicensed and/or unskilled staff and/or individuals to provide care to the Plaintiff decedent;

(j) failing to properly train employees to deal with residents who were unable to care for themselves;

(k) failing to modify the plan of care when the plan of care was inadequate to the needs of the patient;

(l) failing to notify supervisors of the on-call physician's failure to properly care for the plaintiff decedent as required by regulations in effect at the time of this incident;

(m) failing to prevent plaintiff decedent from developing avoidable pressure

sores, or worsening pressure sores;

(n) failing to prevent fecal impaction;

(o) failing to prevent hypotremia and anemia;

(p) failure to prevent acute renal failure and renal and spleen infarction;

(q) failure to prevent medication errors; and

(r) failure to provide sufficient nursing and physician care.

36. As a direct and proximate result of the negligence of the Defendants, their agents, officers, servants and/or employees, specifically the medical director, nursing administrator, and nursing staff, including but not limited to physicians, licensed practical nurses, registered nurses, and certified nurse assistants (as well as third party contractors), Plaintiff's decedent Lois Coleman was caused to sustain serious and permanent personal injuries, including but not limited to: septicemia, septic shock, avoidable Stage 4 decubitis ulcers, avoidable heel ulcers, avoidable sacral decubital ulcers, avoidable leg ulcers and wounds, skin infection, Escherichia Coli Bacteria infection, fecal impaction, staph infection, kidney and spleen infarction, C diff infection, and renal failure due to dehydration, urinary tract infections, infection caused by c difficile, pneumosepsis, malnutrition, and severe muscle deconditioning, and death, as well as pain and suffering related thereto, and to endure great physical pain and mental anguish, and ultimately his death become liable for extensive expenses for medical and hospital care and treatment.

WHEREFORE, Plaintiff Shirley Burch, Administratrix of the Estate of Lois Coleman, deceased demand judgement against all Defendants in an amount in excess of $75,000.00 which will reasonably compensate her for the significant injuries, pain and

suffering, and other damages sustained by Plaintiff's decedent together with attorneys fees, interest and costs of suit.

**SECOND COUNT**

**PLAINTIFF SHIRLEY BURCH, ADMINISTRATRIX OF THE ESTATE OF LOIS COLEMAN, DECEASED, AND IN HER OWN RIGHT V. 1412 LANSDOWNE OPERATING, LLC D/B/A ST. FRANCIS CENTER FOR REHABILITATION & HEALTHCARE AND CENTER MANAGEMENT GROUP, LLC**

**CORPORATE NEGLIGENCE**

37. Plaintiff Shirley Burch, Administratrix of the Estate of Lois Coleman, deceased incorporates by reference paragraphs 1 through 36 of Plaintiff's Complaint as if the same were set forth at length herein.

38. This is a civil liability case in which it has become necessary for the Plaintiff to bring a lawsuit by reason of the profound neglect suffered by Plaintiff's decedent during her residency at St. Francis Center for Rehabilitation & Healthcare located at 1412 Lansdowne Avenue, Darby, Pennsylvania, 19023, by Defendants which resulted in great physical and mental injuries and her death. The serious bodily injuries and death sustained by the deceased made the basis of this lawsuit were proximately caused by the negligence and negligence per se of these named Defendants, their agents, officers, servants and/or employees, specifically the medical director, nursing administrator, and nursing staff, including but not limited to physicians, licensed practical nurses, registered nurses, and certified nurse assistants (as well as third party contractors) acting in the course and scope of their employment and for the benefit of all Defendants.

39. At all times material to this lawsuit, statutory and regulatory duties imposed by

the Commonwealth of Pennsylvania and the United States of America were in full force and effect that were designed to protect a class of persons, to wit: the nursing home residents of this Commonwealth and this country, of which the late Lois Coleman was a member. As a member of such class, the late Lois Coleman was entitled to protection of these laws, namely the Pennsylvania Code and the Code of Federal Regulations, and the rules and regulations promulgated thereunder, specifically but not limited to 28 Pa. Code § 201.14(a), § 206.18(a)-(e), § 211.5(f)(g)(h), § 211.10, § 211.11, and §211.12(c) and (d), as well as OBRA regulations, specifically, 42 CFR 482.1 *et seq*., 42 CFR §483.10(b); 42 CFR 12(b)(1)-(3), §483.13 (c)(2); §483.15, §483.20(b)(1)(xii), §483.20(b)(2)(ii), §483.20(k), §483.20(h)(2), §483.24, §483.25(c)(1), §483.25(g), §483.30, §483.40(c)(1), §483.65, §483.70, §483.75(f), and §483.80 as they pertain to St. Francis Center for Rehabilitation & Healthcare.

40. The Defendants violated these fundamental laws and regulations on a routine basis, engaging in a pattern and practice of conduct prohibited by law.

41. The Defendants, their agents, officers, servants and/or employees, specifically the medical director, nursing administrator, and nursing staff, including but not limited to physicians, licensed practical nurses, registered nurses, and certified nurse assistants (as well as third party contractors) engaged in a pattern and practice of ongoing neglect. More specifically, Defendants continually and repeatedly engaged in negligent conduct, which included:

(a) the continuing failure to provide sufficient numbers of staff to meet said resident's fundamental care needs, including adequate supervision to prevent injury and accident, including his need for assistance with turning, positioning and

transferring;

(b) the ongoing failure to properly examine, supervise, monitor, observe, and assess and treat the late Lois Coleman;

(c) repeated failure to hire and train appropriate personnel to monitor, supervise, and/or treat the late Lois Coleman;

(d) the systemic and ongoing retention of and assignment of unfit, unqualified and incompetent direct care staff;

(e) the ongoing failure to have sufficient staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident;

(f) the continuing failure to provide 24-hour nursing services from enough qualified nursing personnel to meet the total nursing needs of the late Lois Coleman;

(g) the ongoing failure to assure that nursing personnel, including nurse aides and orderlies, was sufficient to provide 24-hour nursing service, and was increased whenever necessary, to assure that each resident including the late Lois Coleman, was protected from injury and to enhance the quality of life, dignity, and respect of each resident, including the late Lois Coleman;

(h) the continuing failure to monitor the late Lois Coleman for signs and symptoms of pain, and to intervene and respond in a timely manner to the continuing presence of the same;

(i) the ongoing failure to obtain and provide timely and appropriate medical treatment and nursing intervention to the late Lois Coleman;

(j) the repeated failure to notify the physician of significant conditions and changes in condition;

(k) the continuing failure to follow physician's orders;

(l) failure to report neglect as required by law;

(m) the repeated failure to establish and implement appropriate corporate budgeting policies which were consistent with the needs of residents including the late Lois Coleman that Defendants had accepted and promised to care for in accordance with the minimum standards prescribed by the state and federal codes and regulations promulgated under such statutes;

(n) the continuing failure to establish and implement appropriate corporate safety, training, staffing, and fundamental nursing care policies to prevent harm to residents and avoid the known consequences of inadequate care; and

(o) the callous disregard for the known dangers caused by Defendants' widespread and continued practice of understaffing, thereby exposing the late Lois Coleman and other residents to life threatening conditions;

(p) the failure to prevent medication errors.

42. Defendants knew or should have known that these acts or omissions posed a serious threat to the safety and welfare of residents such as the late Lois Coleman. Defendants' conduct was not occasional or fortuitous, but rather was the natural and predictable result of the decisions made at the higher levels of Defendants' structure to maximize revenues and profits while at the same time reducing costs. Defendants' policies and financial decisions caused: a) repeated dangerous staffing levels at the facility, b) patient population needs that continuously and grossly exceeded the capacity of the limited number of care givers on duty; and, c) ongoing neglect of the late Lois Coleman.

43. Each and all of the aforementioned acts, both omission and commission, as well as those yet to be discovered, constitute negligence and negligence per se and were a direct and proximate cause of the incident made the basis of this suit and Mrs. Coleman's death and resulting injuries and damages, including but not limited to: septicemia, septic shock, avoidable Stage 4 decubitis ulcers, avoidable heel ulcers, avoidable sacral decubital ulcers, avoidable leg ulcers and wounds, skin infection, Escherichia Coli Bacteria infection, fecal impaction, staph infection, kidney and spleen infarction, C diff infection, and renal failure due to dehydration, urinary tract infections, infection caused by c difficile, pneumosepsis, malnutrition, and severe muscle deconditioning, and death, as well as pain

and suffering related thereto, physical pain and mental anguish, and extensive expenses for medical and hospital care and treatment.

WHEREFORE, Plaintiff Shirley Burch, Administratrix of the Estate of Lois Coleman, deceased, and in her own right demands judgement against the Defendants in an amount in excess of $75,000.00 which will reasonably compensate her for the significant injuries, pain and suffering, and other damages sustained by Plaintiff's decedent together with attorneys fees, interest and costs of suit.

**THIRD COUNT**

**PLAINTIFF SHIRLEY BURCH, ADMINISTRATRIX OF THE ESTATE OF LOIS COLEMAN, DECEASED, AND IN HER OWN RIGHT V. 1412 LANSDOWNE OPERATING, LLC D/B/A ST. FRANCIS CENTER FOR REHABILITATION & HEALTHCARE AND CENTER MANAGEMENT GROUP, LLC**

**NEGLIGENCE PER SE**

44. Plaintiff Shirley Burch, Administratrix of the Estate of Lois Coleman, deceased incorporates by reference paragraphs 1 through 43 of Plaintiff's Complaint as if the same were set forth at length herein.

45. 28 Pa. Code § 201 *et seq*. requires that the Defendants comply with all federal, state and local regulations with regard to long-term care facilities.

46. The Defendants violated Pennsylvania regulations, including but not limited to the following:

(a) 28 Pa. Code § 201.14(a) The licensee is responsible for meeting the minimum standards for the operation of a facility as set forth by the Department and by other State and local agencies responsible for the health and welfare of residents;

(b) 28 Pa. Code §211.5(f) At a minimum, the resident's clinical record shall

include physicians' orders, observation and progress notes, nurses' notes, medical and nursing history and physical examination reports; identification information, admission data, documented evidence of assessment of a resident's needs, establishment of an appropriate treatment plan and plans of care and services provided; hospital diagnoses authentication—discharge summary, report from attending physician or transfer form—diagnostic and therapeutic orders, reports of treatments, clinical findings, medication records and discharge summary including final diagnosis and prognosis or cause of death. The information contained in the record shall be sufficient to justify the diagnosis and treatment, identify the resident and show accurately documented information;

(c) 28 Pa. Code §211.5(g) Symptoms and other indications of illness or injury, including the date, time and action taken shall be recorded;

(d) 28 Pa. Code §211.5(h) Each professional discipline shall enter the appropriate historical and progress notes in a timely fashion in accordance with the individual needs of a resident;

(e) 28 Pa. Code §211.10(d) The policies shall be designed and implemented to ensure that the resident receives proper care to prevent pressure sores and deformities; that the resident is kept comfortable, clean and well-groomed; that the resident is protected from accident, injury and infection;

(f) 28 Pa. Code §211.11(a) The facility shall designate an individual to be responsible for the coordination and implementation of a written resident care plan. This responsibility shall be included as part of the individual's job description;

(g) 28 Pa. Code §211.12(a) The facility shall provide services by sufficient numbers of personnel on a 24-hour basis to provide nursing care to meet the needs of all residents;

(h) 28 Pa. Code §211.12(c) The director of nursing services shall have, in writing, administrative authority, responsibility and accountability for the functions and activities of the nursing services staff, and shall serve only one facility in this capacity; and

(i) 28 Pa. Code §211.12(d) The director of nursing services shall be responsible for:

(1) Standards of accepted nursing practice.
(2) Nursing policy and procedure manuals.
(3) Methods for coordination of nursing services with other resident services.
(4) Recommendations for the number and levels of nursing personnel to be employed.

(5) General supervision, guidance and assistance for a resident in implementing the resident's personal health program to assure that preventive measures, treatments, medications, diet and other health services prescribed are properly carried out and recorded.

47. The defendant violated OBRA regulations, which establish the minimum standard of care to be followed by defendant, including but not limited to the following:

(a) 42 C.F.R. §483.10(b)(11)(i)(A), a facility must immediately inform the resident; consult with the resident's physician when a significant change in the resident's physical, mental or psychosocial status occurs. The Defendant, Catholic Health Services, LLC, d/b/a Catholic Health Group failed to inform Lois Coleman's physician of his significant change in development of pressure sores which led to his suffering from multiple agonizing and clinically avoidable infected pressure ulcers, dehydration, acute renal failure, aspiration, hyponatremia, and contractures that resulted in Mr. Coleman's suffering unnecessary pain, physical and mental deterioration and hastened her death;

(b) 42 C.F.R. §483.10(b)(11)(i)(A), a facility must immediately inform the resident; consult with the resident's physician when a significant change in the resident's physical, mental or psychosocial status occurs. The Defendants, failed to inform Mr. Coleman's physician of his significant change after Mr. Coleman suffered from Stage IV pressure sores, acute renal failure, dehydration, aspiration, hyponatremia, and contractions;

(c) 42 C.F.R. §483.13(c)(2), the facility must ensure that all alleged violations involving mistreatment, neglect or abuse including injuries of unknown source, are reported immediately to the administrator of the facility and to other officials in accordance with State law through established procedures (including to the State survey and certification agency). The Defendant, Catholic Healthcare Services, LLC d/b/a Catholic Health Group failed to notify the administrator and state officials of the mistreatment, neglect and abuse of the late Lois Coleman which caused injuries to Mr. Coleman, including but not limited to infected pressure ulcers, acute renal failure, aspiration, hyponatremia, dehydration, and contractions;

(d) 42 C.F.R. §483.15, the facility must care for its residents in a manner and in an environment that promotes maintenance or enhancement of each resident's quality of life, and here the facility failed to do so;

(e) 42 C.F.R. §483.20 (b)(1)(xii), the facility must make a comprehensive assessment of a resident's needs, using the resident assessment instrument (RAI) specified by the State. The assessment must include at least the following: (xii) Skin

condition. Here, the facility failed to do so;

(f) 42 C.F.R. §483.20 (b)(2)(ii) The facility must conduct a comprehensive assessment of a resident within 14 calendar days after the facility determines, or should have determined, that there has been a significant change in the resident's physical or mental condition. Here the facility failed to conduct an assessment after a significant change in resident's condition, which included her risk for developing pressure sores;

(g) 42 C.F.R. §483.20 (k) The facility must develop a comprehensive care plan for each resident that includes measurable objectives and timetables to meet a resident's medical, nursing, and mental and psychosocial needs that are identified in the comprehensive assessment, and here the facility failed to timely do so;

(h) 42 C.F.R. §483.25 Quality of care is a fundamental principle that applies to all treatment and care provided to facility residents. Based on the comprehensive assessment of a resident, the facility must ensure that residents receive treatment and care in accordance with professional standards of practice, the comprehensive person-centered care plan, and the resident's choices, including but not limited to the following:

(b)Skin integrity -

(1)Pressure ulcers. Based on the comprehensive assessment of a resident, the facility must ensure that -

(i) A resident receives care, consistent with professional standards of practice, to prevent pressure ulcers and does not develop pressure ulcers unless the individual's clinical condition demonstrates that they were unavoidable; and

(ii) A resident with pressure ulcers receives necessary treatment and services, consistent with professional standards of practice, to promote healing, prevent infection and prevent new ulcers from developing.

(e)Incontinence.

(1) The facility must ensure that a resident who is continent of bladder and bowel on admission receives services and assistance to maintain continence unless his or her clinical condition is or becomes such that continence is not possible to

maintain.

(2) For a resident with urinary incontinence, based on the resident's comprehensive assessment, the facility must ensure that -

(i) A resident who enters the facility without an indwelling catheter is not catheterized unless the resident's clinical condition demonstrates that catheterization was necessary;

(ii) A resident who enters the facility with an indwelling catheter or subsequently receives one is assessed for removal of the catheter as soon as possible unless the resident's clinical condition demonstrates that catheterization is necessary, and

(iii) A resident who is incontinent of bladder receives appropriate treatment and services to prevent urinary tract infections and to restore continence to the extent possible.

(3) For a resident with fecal incontinence, based on the resident's comprehensive assessment, the facility must ensure that a resident who is incontinent of bowel receives appropriate treatment and services to restore as much normal bowel function as possible.

(g)Assisted nutrition and hydration. (Includes naso-gastric and gastrostomy tubes, both percutaneous endoscopic gastrostomy and percutaneous endoscopic jejunostomy, and enteral fluids). Based on a resident's comprehensive assessment, the facility must ensure that a resident -

(1) Maintains acceptable parameters of nutritional status, such as usual body weight or desirable body weight range and electrolyte balance, unless the resident's clinical condition demonstrates that this is not possible or resident preferences indicate otherwise;

(2) Is offered sufficient fluid intake to maintain proper hydration and health; and

(3) Is offered a therapeutic diet when there is a nutritional problem and the health care provider orders a therapeutic diet.

(4) A resident who has been able to eat enough alone or with assistance is not fed by enteral methods unless the resident's clinical condition demonstrates that enteral feeding was clinically indicated and consented to by the resident; and

(5) A resident who is fed by enteral means receives the appropriate treatment and services to restore, if possible, oral eating skills and to prevent complications of enteral feeding including but not limited to aspiration pneumonia, diarrhea, vomiting, dehydration, metabolic abnormalities, and nasal-pharyngeal ulcers.

(k)Pain management. The facility must ensure that pain management is provided to residents who require such services, consistent with professional standards of practice, the comprehensive person-centered care plan, and the residents' goals and preferences.

(i) 42 C.F.R. §483.30 The facility must have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care, and here the facility failed to do so;

(j) 42 C.F.R. §483.30(a)(1)(I) and (ii) The facility must provide services by sufficient numbers of each of the following types of personnel on a 24-hour basis to provide nursing care to all residents in accordance with resident care plans (I) Except when waived under paragraph (c) of this section, licensed nurses; and (ii) Other nursing personnel; and here the facility failed to do so;

(k) 42 C.F.R. §483.65. The facility must establish and maintain an infection control program designed to provide a safe, sanitary, and comfortable environment and to help prevent the development and transmission of disease and infection. Here the facility failed to do so;

(l) 42 C.F.R. §483.70, the facility must be administered in a manner that enables it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident; and

(m) 42 C.F.R. §483.75(f), the facility must ensure that nurse aides are able to demonstrate competency in skills and techniques necessary to care for resident's needs, as identified through resident assessments and described in the plan of care.

The Defendants failed to ensure its nurses' aides were able to demonstrate competency and techniques necessary to care for the late Lois Coleman's needs, which ultimately contributed to the late Mrs. Coleman's suffering from septicemia, septic shock, avoidable Stage 4 decubitis ulcers, avoidable heel ulcers, avoidable sacral decubital ulcers, avoidable leg ulcers and wounds, skin infection, Escherichia Coli Bacteria infection, C diff infection, and renal failure due to dehydration, urinary tract infections, infection caused by c difficile, pneumosepsis, malnutrition, and severe muscle deconditioning that resulted in Mrs. Coleman's suffering unnecessary pain, physical and mental deterioration and hastened her death. The Defendants also failed to ensure its nurses' aides were able to demonstrate competency in skills and techniques necessary to care for Lois Coleman needs when she complained on numerous occasions of pain after she experienced unreported pressure sores which ultimately contributed to her painful and debilitating untreated pressure sores.

48. The Plaintiff's decedent Lois Coleman fell within the class of persons the statutory rules, regulations and laws were intended to protect by virtue of 28 Pa. Code § 201 *et seq*. and OBRA Regulations, thus entitling the plaintiff to adopt such laws as the standard of care for measuring defendant's conduct. Thus, the Plaintiffs assert a claim for negligence per se, asserting that, as a matter of law, the conduct of the defendant amounted to negligence and negligence per se.

49. At all relevant times hereto, the Defendants knew or should have known that its residents were elderly and/or in need of particular care and supervision.

50. The Defendants failed to exercise adequate care in the supervision of their residents, such as the Plaintiff's decedent, to whom they owed such a duty.

51. As a direct and proximate result of the negligence of the Defendants, their agents, officers, servants and/or employees, specifically the medical director, attending physicians, nursing administrator, and nursing staff, including but not limited to licensed practical nurses, registered nurses, and certified nurse assistants, Plaintiff's decedent Lois Coleman was caused to sustain serious and permanent personal injuries, including but not

limited to: septicemia, septic shock, avoidable Stage 4 decubitis ulcers, avoidable heel ulcers, avoidable sacral decubital ulcers, avoidable leg ulcers and wounds, skin infection, Escherichia Coli Bacteria infection, fecal impaction, staph infection, kidney and spleen infarction, C diff infection, and renal failure due to dehydration, urinary tract infections, infection caused by c difficile, pneumosepsis, malnutrition, and severe muscle deconditioning, and death, as well as pain and suffering related thereto, and to endure great physical pain and mental anguish, and become liable for extensive expenses for medical and hospital care and treatment.

52. Title XVIII of the Social Security Act is administered by the Centers for Medicare and Medicaid Services (CMS). CMS lists several occurrences in a hospital or nursing home setting which they determined should never occur and have termed these events as "never events." One of these conditions are called hospital or nursing home acquired pressure sores.

WHEREFORE, Plaintiff Shirley Burch, Administratrix of the Estate of Lois Coleman, deceased, and in her own right demands judgement against all Defendants in an amount in excess of $75,000.00 which will reasonably compensate her for the significant injuries, pain and suffering, and other damages sustained by Plaintiff's decedent together with attorneys fees, interest and costs of suit.

**FOURTH COUNT**

**PLAINTIFF SHIRLEY BURCH, ADMINISTRATRIX OF THE ESTATE OF LOIS COLEMAN, DECEASED, AND IN HER OWN RIGHT V. 1412 LANSDOWNE OPERATING, LLC D/B/A ST. FRANCIS CENTER FOR REHABILITATION & HEALTHCARE AND CENTER MANAGEMENT GROUP, LLC**

**WRONGFUL DEATH**

53. Plaintiff Shirley Burch, Administratrix of the Estate of Lois Coleman, deceased incorporates by reference paragraphs 1 through 52 of Plaintiff's Complaint as if the same were set forth at length herein.

54. Due to the conduct or failure to act on the part of the Defendants as aforesaid, Plaintiffs decedent have left surviving the following individuals entitled to recover for her death: Shirley Burch and William Coleman, residing in Altus, Oklahoma.

55. Said individuals, by reason of the death of Plaintiffs decedent, have suffered financial loss and other expenses of the Administration of the Estate.

56. Plaintiffs decedent's statutory survivors have further suffered the loss of Decedent's society and comfort, friendship, guidance, love and affection, and other damages as are recoverable under the Wrongful Death Act of Pennsylvania.

57. Decedent did not bring an action for personal injuries during her lifetime, which were terminated in no other actions before death of the Decedent has been commenced against these Defendants. The Plaintiff therefore brings this action under and by virtue of the Act of 1855, P.L. 309, as amended, and 42 P.S.C.A §8301.

58. Plaintiff is entitled to recover, in addition to other damages, amounts for reasonable hospital nursing, medical and funeral expenses, and expenses of the administration necessitated by reason of the conduct, omission to act causing death or increasing risk of harm.

WHEREFORE, Plaintiff Shirley Burch, Administratrix of the Estate of Lois Coleman, deceased, and in her own right demands judgement against all Defendants in an

amount in excess of $75,000.00 which will reasonably compensate her for the significant injuries, pain and suffering, and other damages sustained by Plaintiff's decedent together with attorneys fees, interest and costs of suit.

## SIXTH COUNT

## PLAINTIFF SHIRLEY BURCH, ADMINISTRATRIX OF THE ESTATE OF LOIS COLEMAN, DECEASED, AND IN HER OWN RIGHT V. 1412 LANSDOWNE OPERATING, LLC D/B/A ST. FRANCIS CENTER FOR REHABILITATION & HEALTHCARE AND CENTER MANAGEMENT GROUP, LLC

## SURVIVAL ACTION

59. Plaintiff Shirley Burch, Administratrix of the Estate of Lois Coleman, deceased incorporates by reference paragraphs 1 through 58 of Plaintiff's Complaint as if the same were set forth at length herein.

60. Plaintiff brings this action on behalf of the Estate of Lois Coleman, under and by virtue of the Act of June 30, 1972, P.L. 500, No. 164, 2, effective July 1, 1972, 20 P.S.C.A. §3373 and 42 Pa. C.S.A §8302 against Defendants 1412 Lansdowne Operating, LLC D/b/a St. Francis Center for Rehabilitation & Healthcare and Center Management Group, LLC.

61. Plaintiff claim on behalf of said estate damages suffered by reason of the death of Decedent, Lois Coleman, as well as for pain and suffering of the Decedent prior to her death.

WHEREFORE, Plaintiff Shirley Burch, Administratrix of the Estate of Lois Coleman, deceased, and in her own right demands judgement against all Defendants in an amount in excess of $75,000.00 which will reasonably compensate her for the significant

injuries, pain and suffering, and other damages sustained by Plaintiff's decedent together with attorneys fees, interest and costs of suit.

**SEVENTH COUNT**

**PLAINTIFF SHIRLEY BURCH, ADMINISTRATRIX OF THE ESTATE OF LOIS COLEMAN, DECEASED, AND IN HER OWN RIGHT V. 1412 LANSDOWNE OPERATING, LLC D/B/A ST. FRANCIS CENTER FOR REHABILITATION & HEALTHCARE AND CENTER MANAGEMENT GROUP, LLC**

**PUNITIVE DAMAGES**

62. Plaintiff Shirley Burch, Administratrix of the Estate of Lois Coleman, deceased, incorporates by reference paragraphs 1 through 61 of Plaintiff's Amended Complaint as if the same were set forth at length herein.

63. The aforementioned acts of the Defendants were outrageous and reckless with complete disregard to the rights of Plaintiff-decedent and in reckless indifference to the rights of others and specifically shocked the conscience of the community.

64. The aforementioned acts of the Defendants rose to criminal conduct in violation of 18 Pa.C.S. § 2705, 2713.

65. The aforementioned acts rose to criminal conduct in violation of the United States Criminal code.

WHEREFORE, Plaintiff Shirley Burch, Administratrix of the Estate of Lois Coleman, deceased, and in her own right demands judgement against all Defendants in an amount in excess of $75,000.00 which will reasonably compensate her for the significant injuries, pain and suffering, and other damages sustained by Plaintiff's decedent together with attorneys fees, interest and costs of suit.

Date: May 21, 2018 By: ______________________

Rhonda Hill Wilson, Esquire
Attorney I.D. #5068457
Attorney for the Shirley Burch, Administratrix of the Estate of Lois Coleman, deceased, and in her own right

.